IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TIMOTHEUS ELIJAH HEMINGWAY, ) | Civil Action No. 3:08-849-GRA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JACOB SPEIGHTS; ) | |
| WANDA RIED; ) | |
| M. JAMES; ) | **REPORT AND RECOMMENDATION** |
| MICHAEL BROWN; ) | |
| JOYCE W. BRUNSEN; ) | |
| JOEY NORRIS; ) | |
| KENNY BOONE; AND ) | |
| M. NAGY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action was filed by the pro se Plaintiff on March 10, 2008.[1] At the time of the alleged incidents, he was housed at the Florence County Detention Center ("FCDC"). He is currently an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections. Defendants, all employees of the FCDC, are Jacob Speights ("Speights"), Wanda Reed ("Reed"), M. James ("James"), Michael Brown ("Brown"), Joyce Brunson ("Brunson"), Joey Norris ("Norris"), Kenny Boone ("Boone"), and M. Nagy ("Nagy"). On July 18, 2008, Defendants filed a motion for summary judgment.[2] Plaintiff, because he is proceeding pro se, was advised on July 22, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

[2] Defendants did not file their memorandum in support with the court until September 12, 2008, but served Plaintiff with a copy of the memorandum on July 18, 2008. See Doc. 44, Defendants' Certificate of Service.

Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on August 22, 2008.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that Defendant Speights used excessive force against him and that he received inadequate medical care after the incident. Plaintiff requests monetary damages and injunctive relief.[3] Defendants contend that their motion for summary judgment should be granted because: (1) they are entitled to qualified immunity; (2) they are immune from suit in their official capacities;[4] (3) Plaintiff fails to state a cause of action against Defendants Brown, Brunson, Norris, and Boone because these Defendants were not deliberately indifferent to Plaintiff's medical needs; and (4) Defendants Brown, Brunson, Norris, and Boone cannot be held liable based on a theory of respondeat superior.

    1.    <u>Respondeat Superior</u>

Defendants Brown, Brunson, Norris, and Boone contend that they cannot be held liable on a theory of respondeat superior as Plaintiff has not shown tacit authorization or corrective inaction on the part of these Defendants. The doctrine of respondeat superior generally is

---

[3] Plaintiff's requests for injunctive relief are moot as he was transferred from the FCDC to the South Carolina Department of Corrections. See <u>Williams v. Griffin</u>, 952 F.2d 820 (4th Cir. 1991); <u>Ross v. Reed</u>, 719 F.2d 689 (4th Cir. 1983).

[4] When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. See <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989). A determination that the state treasury will be liable for judgment is largely, if not wholly, dispositive of entitlement to Eleventh Amendment immunity. See <u>Gray v. Laws</u>, 51 F.3d 426 (4th Cir. 1995). Defendants have submitted insufficient information to determine whether Defendants are employees of the state and/or entitled to Eleventh Amendment immunity.

2

inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Brunson, Norris, or Boone were personally responsible for any of the alleged incidents.[5] Further, Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Plaintiff claims that these Defendants knew of prior assaults by Speights and failed to do anything about it. He has, however, provided no names of those detainees allegedly assaulted and no information to support this assertion. Thus, Plaintiff fails to show that Defendants Brunson, Norris, and Boone are liable on a theory of respondeat superior or supervisory liability.

2.      Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

---

[5]Plaintiff, however, appears to allege that Brown was deliberately indifferent to his medical needs. He claims that he showed Defendant Brown his injuries, asked for medical attention, and was told by Brown that there was no nurse available.

The analysis of the defense of qualified immunity is examined using a two-step analysis. See <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The first step is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. <u>Id.</u> at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." <u>Id.</u> If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. <u>Id.</u> If the right was not clearly established, the defendants are entitled to qualified immunity. <u>Id.</u>

Here, Plaintiff fails, in the light most favorable to him, to show that Defendants' conduct violated any of his constitutional rights, as discussed further below. Thus, Defendants are entitled to qualified immunity.

        a.     <u>Excessive Force</u>

Plaintiff appears to allege that he was subjected to excessive force on December 27, 2007 at approximately 9 to 10 p.m. He claims that Defendant Speights threw him into a wall, choked him, slammed him to the floor, punched him, slung him about, and kneed him. He claims that he suffered knots to the sides and back of his head, a concussion, a swollen and black eye, back pain, swollen and bruised knees, cuts on both wrists, and mental injuries as a result of the alleged incident. Defendants appear to argue that they are entitled to qualified immunity because Plaintiff was disobeying direct orders, Plaintiff assaulted Defendant Speights, and Defendants believed they were following policy and procedure and not violating Plaintiff's rights.

The Due Process Clause protects a pretrial detainee from "'the use of excessive force that amounts to punishment.'" United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990)(quoting Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)), cert. denied, 498 U.S. 1049 (1991). In Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994 (en banc), cert. denied, 513 U.S. 1114 (1995), the Fourth Circuit held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is de minimis. Although Norman concerned a convicted prisoner (analyzing claims under the Eighth Amendment) rather than a pretrial detainee, its de minimis standard may also be applicable to pretrial detainees. Riley v. Dorton; 115 F.3d 1159 (4th Cir. 1997)(holding that a purely de minimis level of injury does not constitute the kind of excessive force amounting to punishment that Bell requires), cert. denied, 520 U.S. 1030 (1997); Williams v. Dehay, 81 F.3d 153, 1996 WL 128422 (4th Cir. 1996)[Table](affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury). Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See Norman, 25 F.3d at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be 'of a sort repugnant to the conscience of mankind,' and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to show that his Fourteenth Amendment rights were violated because the injuries he received were de minimis. The FCDC General Occurrence Report submitted by Defendants indicates that Plaintiff received a small cut on the right side of his face. Defendant Speights states that Plaintiff suffered a small cut on the right side of his face and a small knot over his right eye. Speights Aff., Para. 9. Defendant Nagy states that at the time of the incident she was employed at the FCDC as a medical assistant. She states that on December 28, 2007, she observed that Plaintiff had two knots on the back of his head, a blackened right eye, a small surface scratch on his shoulder and wrist, some reddening of his wrist with no broken skin, good range of movement of his wrist, and a knee that was red with no broken skin. Nagy states that Plaintiff was able to stand and walk without problems and that she administered Tylenol. Nagy Aff., Paras. 2-4.

Thus, any use of force by Defendants was de minimis. See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell

cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff could show he suffered more than de minimis injuries, he fails to show that the use of force amounted to punishment in violation of the Fourteenth Amendment. "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of

the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973); see also United States v. Cobb, supra; and Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1299-1300 (E.D.N.C. 1989).

T. McCutcheon, an officer at the FCDC who is not a party to this action, states that he allowed Plaintiff and detainee Shaw out of their cells so that Shaw could cut Plaintiff's hair. McCutcheon subsequently informed the detainees that their time was up, but Plaintiff began to argue and curse, complaining that thirty minutes was not enough time for a haircut. He informed Defendant Reed that Plaintiff refused to return to his cell. McCutcheon states that Plaintiff subsequently returned to his cell and began packing his personal items and that James, Reed, Cpl. N. Sanders, Officer T. Taylor, and Speights entered Plaintiff's cell. Speights asked Plaintiff to turn around and put his hands behind his back, but Plaintiff continued to pack his personal items. Plaintiff was asked again to turn around and place his hands behind his back, but refused to do so. McCutcheon states that Plaintiff became disorderly and combative and was physically restrained. Plaintiff hit Speights in his left eye while the officers were attempting to restrain Plaintiff. McCutcheon states that even after being restrained, Plaintiff continued to kick staff members. McCutcheon Aff. McCutcheon submitted a copy of the General Occurrence Report which indicates that Plaintiff refused direct orders to be cuffed, became disorderly and combative, and hit Speights in the eye.

Speights states that Plaintiff refused orders to turn around and be cuffed, Plaintiff became disorderly and combative, Speights physically restrained Plaintiff pursuant to FCDC Policy and Procedure, and Plaintiff continued to attempt to kick staff members. Additionally, Speights states

8

that a result of Plaintiff's resistance, he (Speights) received a bruised eye, a cut over his left ear, and a scrape on his left knee. He states that Plaintiff constantly threatens officers and is frequently disruptive. Speights Aff., Paras. 6-7 and 9-11. Defendant Reed states that Plaintiff was disruptive and threatening and ignored directives. He states that officers took the steps necessary to control the situation and Plaintiff continued to kick staff members. Reed Aff., Paras. 3-4.

In this case, analysis of these factors fails to show that the use of force amounted to punishment. First, force was necessary to gain control of Plaintiff. In his opposition memorandum, Plaintiff claims he complied with orders to be cuffed, but he does not appear to deny that he refused to return to his cell, cussed out officers, punched Speights, and kicked at other corrections officers. As discussed above, there is no indication that Plaintiff suffered anything more than de minimis injury from the incident. Finally, Defendants' actions appear to have been a good-faith effort to restore order.

   b. <u>Medical Claims</u>

    Plaintiff appears to allege that Defendants were deliberately indifferent to his serious medical needs after the use of force incident. Specifically, he claims that he showed Defendant Brown his injuries and asked for medical attention, but Brown just told him he would be alright and that no nurse was available at the time. Plaintiff states that he asked to be seen by medical personnel numerous times, but was not seen by Nurse Moore until approximately 3:00 on December 28. He claims that Nurse Moore did not properly examine him, told him he did not suffer a concussion, refused to give him any pain medication, and would not allow his injuries to be photographed. Defendants contend that they were not deliberately indifferent to Plaintiff's medical needs, Plaintiff has not shown that he had any serious medical needs, Plaintiff received medical

treatment, and he cannot state a constitutional claim based on a disagreement as to the treatment he received.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[6] The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

---

[6] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

10

> order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

11

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Although he claims he was not timely seen for his injuries and he disagrees with the treatment given, Plaintiff admits that a nurse assessed him and told him he did not have a concussion. As discussed above, medical assistant Nagy observed on December 28, 2007 that Plaintiff's only injuries were two knots on the back of his head, a blackened right eye, a small surface scratch on his shoulder and wrist, some reddening of his wrist with no broken skin, and a red knee with no broken skin. She noted that Plaintiff had good range of movement of his wrist and was able to stand and walk without problems. Nagy administered Tylenol. Nagy Aff., Paras. 3-4.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

3.      State Law Claims

Plaintiff also appears to allege claims under South Carolina law including claims for assault, conspiracy, and medical malpractice. It is recommended that Plaintiff's state law claims be dismissed sua sponte. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as

discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

## MOTION TO STRIP DEFENDANTS OF IMMUNITIES

On June 23, 2008, Plaintiff filed a pleading titled "Motion to Scrip [sic] Defendants of Immunities." He argues that it is clear by bruises, injuries, witnesses, ceiling camera, statements, and recordings[7] that force was not applied in a good faith effort to maintain or restore discipline such that immunities are automatically waived. Defendants contend that Plaintiff's motion should be denied because it is untimely and Plaintiff has not shown the defenses in question to be insufficient, redundant, immaterial, impertinent, or scandalous.

Plaintiff's motion appears to be a motion to strike defenses from Defendants' answer pursuant to Federal Rule 12(f). This rule provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Plaintiff's motion is untimely, as it was filed more than twenty days after Plaintiff was served with the answer.[8] Further, Plaintiff has not shown that the immunity defenses in question are insufficient, redundant, immaterial, impertinent, or scandalous.

---

[7] Plaintiff submitted a statement from Christopher Pringle, who appears to have been another detainee at FCDC. Pringle states that he saw Speights pushing Plaintiff as they exited the cell and that when Plaintiff tried to stop from falling, Jacobs kneed Plaintiff repeatedly in the stomach, shoved him to the ground, and appeared to choke him. Plaintiff has submitted no evidence of his alleged bruises and injuries and has presented no ceiling camera tape or recording.

[8] Defendants filed their answer on May 14, 2008.

13

## **CONCLUSION**

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 44) be **granted** and any state law claims be dismissed <u>sua sponte</u>. It is also recommended that Plaintiff's motion to strip Defendants of their immunities (Doc. 35) be **denied**.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

January 13, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).